IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DAVID HANSON,                                          OPINION AND
                                                        ORDER
                        Plaintiff,

                                                        08-cv-58-bbc
            v.

DANE COUNTY, DANE COUNTY SHERIFF'S
DEPARTMENT, DAWN BARGER, TIM RICHTER
and STEVE WITTMANN,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       In this civil action for monetary relief brought under 42 U.S.C. § 1983, plaintiff

David Hanson contends that defendants Dawn Barger, Tim Richter and Steve Wittmann

violated his rights under the Fourth, Fifth and Fourteenth Amendments during their

investigation of a 911 hang-up call.  Plaintiff contends that defendant Dane County is liable

because its policies and practices caused the constitutional violations by the individual

defendants.  Although Dane County Sheriff's Department is named as a defendant, it is an

agency of Dane County and for that reason is not a suable entity separate from the county.

Whiting v. Marathon County Sheriff's Department, 382 F.3d 700, 704 (7th Cir. 2004)

(citing Buchanan v. City of Kenosha, 57 F. Supp. 2d 675 678-79 (E.D. Wis. 1999)).

1

Therefore, under Fed. R. Civ. P. 21, "Dane County Sheriff's Department" will be dismissed from this case.  Jurisdiction is present under 28 U.S.C. § 1331.

Plaintiff alleged the following claims in his complaint:

(1) Defendants violated his rights under the Fourth Amendment by entering his home without a valid basis for doing so;

(2) Defendants violated his rights under the Fourth Amendment by remaining in his home after they found no signs of a disturbance;

(3) Defendants violated his rights under the Fourth Amendment by seizing him unreasonably;

(4) Defendants violated his substantive due process rights under the Fourteenth Amendment by questioning his two children without his or his wife's permission;

(5) Defendants violated his rights under the Fifth Amendment  by failing to inform him of his <u>Miranda</u> rights when he was in the garage under questioning;

(6) Defendants violated his rights under the Fourth Amendment by illegally arresting him because the arrest was the fruit of violations described in (2) and (3) above;

(7) Defendants violated his rights under the Fourth Amendment by illegally arresting him when they did not have probable cause; and

(8) Defendant Dane County's policies, practices and training caused the violation of his rights under the Fourth Amendment and his substantive due process rights.

2

In his complaint, plaintiff raised a claim that defendants violated his rights under the Fourth Amendment by coercing him to take a breathalyzer test while at the police station. However, in his response to defendants' motion for summary judgment, plaintiff agrees to the dismissal of this claim because "the evidence obtained during discovery indicates that the breathalyzer test was given pursuant to standard booking procedures for valid non-investigative purposes." Dkt. #53 at 2. Accordingly, that claim will be dismissed.

Defendants have filed a motion for summary judgment on all of plaintiff's claims. Plaintiff has filed a cross motion for summary judgment on all of his claims except (1), (5), and (7). Defendants' motion will be granted and plaintiff's motion will be denied. Exigent circumstances justified the warrantless entry into plaintiff's home without a warrant and all the actions defendants took thereafter were reasonably related to their attempt to determine whether an emergency still existed. Once plaintiff admitted that his wife had called 911 after he "bumped" her during a "heated" argument, defendants had probable cause to arrest him for domestic abuse.

The only close call is whether plaintiff's Fifth Amendment rights were violated when defendant Wittmann failed to inform plaintiff of his Miranda rights when questioning him in the garage. However, I conclude that defendant Wittmann is entitled to qualified immunity on that claim because the law was not clearly established that plaintiff was "in custody" during questioning. Further, because none of the individual defendants violated

3

plaintiff's constitutional rights, it follows that defendant Dane County may not be held liable.  King ex rel. King v. East St. Louis School District189, 496 F.3d 812, 819, (7th Cir. 2007) (to hold municipality liable, plaintiff must first show violation of constitutional rights by municipal employee)

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed.

## UNDISPUTED FACTS

### A.  Parties

Plaintiff David Hanson is an adult resident of Dane County, Wisconsin.  Defendant Dane County is a municipal corporation organized under the laws of the state of Wisconsin. Defendants Dawn Barger, Tim Richter and Steve Wittmann are deputy sheriffs employed by the Dane County Sheriff's Department.

### B.  The Investigation on October 9, 2005

Around 7:50 p.m. on October 9, 2005, the Dane County 911 center received a call from plaintiff's residence.  When the dispatcher picked up the phone, the caller had already hung up.  The dispatcher called plaintiff's residence to try to determine the purpose of the call.  When no one answered, defendants Richter, Barger, and Wittmann were dispatched

4

to plaintiff's residence to investigate.

Defendants Richter and Barger drove in the same car and arrived at plaintiff's residence shortly before 8:00 p.m.  Defendant Wittmann drove a separate car and arrived later at plaintiff's residence.  Upon arrival, defendants Richter and Barger entered plaintiff's garage, which was open.  At some point, plaintiff told defendants Richter and Barger that he had had an argument with his wife and that she dialed 911.  (The parties dispute whether plaintiff made these statements before or after defendants came into the house and whether plaintiff gave defendants consent to enter his home.)

Inside the house, defendant Barger told plaintiff that the officers would like to speak to him and his wife separately.  Plaintiff went into the four-season room of the house, while defendants Richter and Barger questioned plaintiff's wife in the kitchen.

During questioning, plaintiff's wife admitted she had called 911 but said she could not remember the reason why.  She also admitted to arguing with plaintiff before the 911 call, but stated several times that she could not remember what the argument was about. Defendant Barger believed that plaintiff's wife appeared to be nervous and upset during the questioning, but she told defendants that she felt safe in the home.  (The parties dispute whether plaintiff's wife repeatedly asked defendants Richter and Barger to leave the house during her questioning.)

Plaintiff's wife informed defendants Richter and Barger that her two daughters were

5

in the home, but that she did not want defendants to speak to them and would not give them permission to do so. Defendants Richter and Barger informed plaintiff's wife that it was departmental policy to personally check on everyone in the house. When defendant Barger walked down the hallway to check on the children with plaintiff's wife, plaintiff attempted to follow, but defendant Barger prevented him from doing so. Defendant Barger confirmed that the two children, ages 13 and 15, appeared all right. The children denied knowing anything about what happened.

When defendant Wittmann arrived on the scene, he interviewed plaintiff in the four-season room. Plaintiff admitted that he and his wife had had a "heated" argument and that he had consumed several alcoholic drinks throughout the day. Plaintiff told defendant Wittmann that he did not want his children involved in the situation, but defendant Wittmann informed plaintiff that the children would have to be interviewed if they witnessed any part of the incident. Plaintiff responded that he understood.

After an hour, or around 9:00 pm, defendant Richter called the sergeant on duty, who told the deputies to re-interview the Hanson family because they were having trouble getting any of the details about the incident. Under Dane County Sheriff's Department policy and training for possible domestic abuse situations, deputies are required to complete a thorough investigation. They will not leave until probable cause exists to make an arrest or until they are satisfied that the criteria to make an arrest do not exist, regardless of the complainant's

wishes.

Defendant Barger re-interviewed plaintiff's children, this time in separate rooms and without plaintiff's wife.  Both children responded they did not know what their parents were arguing about and didn't know that anyone called 911.  (The parties dispute whether defendant Barger asked the children whether their father had ever hit their mother and whether their parents were arguing about finances or an affair.)

Defendant Wittmann and plaintiff went into the garage to further discuss the situation.  (The parties dispute whether Wittmann "required" or "suggested" that plaintiff go into the garage.)  At one point while being questioned in the garage, plaintiff wanted a glass of water.  Defendant Wittmann retrieved a glass of water rather than allowing plaintiff to get it himself.  While in the garage, plaintiff told defendant Wittmann that his wife may have called 911 because he "bumped" her in the kitchen during their argument.  At 9:06 p.m, the officers placed plaintiff under arrest for domestic battery.  The charges against him were later dropped.

OPINION

A.  <u>Standard for Summary Judgment</u>

Under Fed. R. Civ. P. 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of

law." Goldstein v. Fidelity & Guaranty Insurance Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. All reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party. Baron v. City of Highland Park, 195 F.3d 333, 338 (7th Cir. 1999).

When both parties have filed cross motions for summary judgment, both are required to show that no genuine issues of material fact exist, when the facts are taken in the light most favorable to the party opposing each motion. If genuine issues of material fact exist, neither party is entitled to summary judgment. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983). Therefore, each party bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law. However, the fact that one party fails to satisfy that burden on its own motion does not indicate by itself that the opposing party has satisfied its burden and must be granted summary judgment on the other motion. Grow v. City of Milwaukee, 84 F. Supp. 2d 990, 996 (E.D. Wis. 2000) (citing 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 at 327-28 (3d ed. 1998)).

### B.  Fourth Amendment:  Entering Plaintiff's Home

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. art. IV.  "The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, and accordingly, warrantless entries are considered presumptively unreasonable."  United States v. Ellis, 499 F.3d 686, 689 (7th Cir. 2007) (internal quotations and citations omitted).  The amendment's protections apply not only to the home, but also to structures, such as a garage, that are a part of the home's curtilage, the area outside the home itself but so close to and intimately connected with the home that it can be reasonably be considered part of the home.  United States v. Dunn, 480 U.S. 294, 300 (1987).

Courts have recognized a number of exceptions to the warrant requirement.  One is exigent circumstances, which justify a warrantless search or seizure when the police reasonably fear for the safety of someone inside the premises.  United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000).  The test for determining the existence of exigent circumstances is objective.  United States v. Kempf, 400 F.3d 501, 503 (7th Cir. 2005). The government bears the burden to prove that the circumstances that existed at the moment of entry would lead a reasonable and experienced law enforcement officer to believe that

9

someone inside the premises required immediate assistance.  Id.  (citing United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1995)).

Only defendants moved for summary judgment with respect to plaintiff's claim that defendants violated plaintiff's rights under the Fourth Amendment when defendants Richter and Barger entered plaintiff's garage and home.  I agree with defendants that the undisputed facts show that exigent circumstances existed to allow a warrantless entry into plaintiff's home.  This makes it unnecessary to consider defendants' alternative arguments that they had consent to enter plaintiff's home and that they were entitled to enter under the "community caretaker" doctrine.

It is undisputed that before entering plaintiff's open garage, defendants Richter and Barger knew that a 911 hang-up call had been made from plaintiff's residence and that the return call to plaintiff's residence went unanswered.  By itself, a 911 call may be enough to support a warrantless search under the exigent circumstances exception.  Richardson, 208 F.3d at 630; see also United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003).   After all, "[a] 911 call is one of the most common—and universally recognized—means through which police and other emergency personnel learn that there is someone in a dangerous situation who urgently needs help.  This fits neatly with a central purpose of the exigent circumstances (or emergency) exception to the warrant requirement, namely, to ensure that the police or other government agents are able to assist persons in danger or otherwise in

10

need of assistance." <u>Richardson</u>, 208 F.3d at 630.

In <u>Richardson</u>, 208 F.3d at 627-28, the 911 caller reported information regarding a possible rape and murder at a residence.  In this case defendants did not have specific information about the call, but that did not diminish their need to investigate further.  If anything, a 911 hang-up call with an unanswered return call from the 911 dispatcher may present even more reason to believe that someone inside the residence is in immediate need of assistance.  An unanswered 911 return call suggests that someone in the residence is injured or otherwise incapacitated so as to be unable to answer the return call.  <u>United States v. Elder</u>, 466 F.3d 1090, 1090 (7th Cir. 2006).  Accordingly, I conclude that defendants were justified in entering plaintiff's home, even before they learned that plaintiff had an argument with his wife and that his wife had dialed 911.  The hang-up 911 call and the unanswered 911 return call made it reasonable for defendants Richter and Barger to believe that somebody inside required immediate assistance.  Therefore, summary judgment will be granted to defendants on plaintiff's claim that defendants violated his rights under the Fourth Amendment for entering his home.

C.  Fourth, Fifth and Fourteenth Amendments: Defendants' Actions After Entering Plaintiff's House

Plaintiff asserts several claims that defendants violated his constitutional rights under

11

the Fourth, Fifth and Fourteenth Amendments after they entered his home.  First, plaintiff argues that defendants Richter, Barger and Wittmann violated his rights under the Fourth Amendment by remaining in his home even after they discovered that no one in the house appeared to be hurt and saw no signs of a disturbance and by illegally seizing him.  Second, plaintiff argues that defendant Barger violated his right of familial relations under the Fourteenth Amendment both by interrogating his children and by the manner in which they did so.  Third, plaintiff argues that defendant Wittmann violated his rights under the Fifth Amendment by failing to provide him with a <u>Miranda</u> warning before questioning him in the garage.

1.  <u>Fourth Amendment: refusal to leave and seizure of plaintiff</u>

In his motion for summary judgment, plaintiff argues that defendants had no authority to remain in his home after they saw no signs of a disturbance or injury.  Plaintiff also contends that his wife withdrew her consent for defendants to remain in the house by asking defendants to leave the house several times while she was being questioned.  However, because I conclude that defendants did not need consent to stay in plaintiff's home, it is unnecessary to consider that argument.

The Supreme Court has held that "a warrantless search must be strictly circumscribed by the exigencies which justify its initiation," and it must be objectively reasonable.  <u>Mincey</u>

v. Arizona, 437 U.S. 385, 393-94 (1978) (citing Terry v. Ohio, 392 U.S. 1, 25-26 (1968) (internal quotations omitted).  This same requirement applies to subsequent seizures resulting from a warrantless entry into a home.  United States v. Lenoir, 318 F.3d 725, 730-31 (7th Cir. 2003) (citing Sheik-Abdi v. McClellan, 37 F.3d 1240, 1243-44 (7th Cir. 1994)).  (In this case, defendants do not seriously dispute that they seized plaintiff within the meaning of the Fourth Amendment.  Accordingly, I consider only whether the seizure was reasonable.)

The Court of Appeals for the Seventh Circuit has not yet considered under what circumstances it is reasonable for police to continue investigating a possible domestic violence situation in the home even after the police learn that no one is harmed.  However, other circuits have done so and I find their reasoning persuasive.  In United States v. Brooks, 367 F.3d at 1128, 1131, 1137 (9th Cir. 2004), the Court of Appeals for the Ninth Circuit held that it was reasonable for a law enforcement officer to remain in a private hotel room and question a potential domestic violence victim even after she stated several times that she had not been assaulted, she declined assistance and the officers did not see signs of a physical assault.  In deciding that the police had acted reasonably, the  court noted that in a situation in which the potential aggressor is present, a potential victim "may fear that by complaining to the police, he or she might expose himself or herself to likely future harm at the hands of a hostile aggressor who may remain unrestrained by the law."  Id. at 1137 (citing Rhonda

13

L. Kohler, The Battered Women and Tort Law: A New Approach to Fighting Domestic

Violence, 25 Loy. L.A. L. Rev. 1025, 1026-27 (1992)); see also United States v. Wooden,

551 F.3d 647 (7th Cir. 2008) (stating that in domestic violence situation, "an armed man

may threaten the woman with him that, unless she 'acts natural' when the police arrive, she

will be beaten or shot later").  When analyzing the reasonableness of the law enforcement

officer's questions, the appellate court found that he had asked no questions that did not

relate to the exigency that had prompted him to the scene.  Brooks, 367 F.3d at 1138.

Similarly, the Court of Appeals for the First Circuit stated that in domestic violence

situations, "violence may be lurking and explode with little warning.  Domestic violence

victims may be intimidated or suffer from a dependence inherent in the abusive relationship.

The signs of danger may be masked." Fletcher v. Town of Clinton, 196 F.3d 41, 50 (1st Cir.

1999) (citing Bureau of Justice Statistics, U.S. Dept. of Justice, Rep. No. NCJ-167237,

Violence by Intimates at v (1998) (noting that one of the "most common reasons given by

victims for not contacting the police" was that they "feared retaliation")).

In this case, the undisputed facts establish that defendants' actions in plaintiff's home

and the length of their stay in the home were objectively reasonable.  Once there, defendants

Richter, Barger and Wittmann discovered more information that reasonably led them to

believe an emergency may still have existed in the home:  (1) plaintiff admitted that he and

his wife had had an argument and that plaintiff's wife had dialed 911; (2) plaintiff's wife

14

confirmed that she had argued with plaintiff and that she had called 911, but when asked further about it, she stated she could not remember why she had called 911 or what the argument was about, even though she had made the call less than a half-hour earlier; (3) during questioning of plaintiff's wife, defendant Barger noticed that she appeared nervous and upset; and (4) later, plaintiff described his argument with his wife as "heated" and admitted that he had consumed several alcoholic drinks throughout the day.  These facts made it reasonable for defendants Richter, Barger and Wittmann to believe that an emergency still existed at the scene.

Plaintiff says that defendants had no basis for staying in the home once his wife said she felt safe and asked defendants to leave, but defendants had ample reason to question the sincerity of these statements.  Perhaps the strongest reason was the obvious falsity of other statements she made. When defendants asked plaintiff's wife several times why she dialed 911, she responded that "she couldn't remember."  It is difficult to believe that a person could forget the reason for dialing 911 within a half-hour after doing so.  Because plaintiff's wife never provided an answer to the question why she dial 911 that made any sense, it was reasonable for defendants to disregard her statements that she felt safe.  In fact, it would be objectively reasonable for any officer to believe that it could be a grave mistake to leave plaintiff's home just because his wife said she felt safe and requested them to leave.

Plaintiff argues that defendants' view of his wife's demeanor is unsupported and that

15

his wife was not upset about anything that had happened in the home but about defendants Barger's and Richter's not paying attention to what she was saying. However, the question is not whether defendants' view of the reasons for plaintiff's wife's distress was accurate, but whether they had an objective basis to believe that she was upset because she was afraid. I conclude that they did.

For similar reasons, I conclude that it was reasonable for defendants to separate plaintiff from his wife during questioning, not allow him to talk to his children, move him into the garage for questioning and not allow him to re-enter his house to get a glass of water. As noted above, it was reasonable for defendants to believe that plaintiff's wife may have called 911 in the midst of an incident of domestic violence. Thus, it was reasonable to separate a potential victim from the potential aggressor within the home in an attempt to make the potential victim more forthcoming. White v. City of Markham, 310 F. 3d 989, 996 (7th Cir. 1994) (holding that when investigating ongoing domestic disturbance between nonresident homeowner and relative guest, law enforcement officer's actions of threatening arrest unless nonresident homeowner left home was not unreasonable seizure). Similarly, it was reasonable to forbid plaintiff from speaking to his children while defendants questioned them because defendants believed plaintiff's children would be more forthcoming if questioned alone. Defendants' restrictions on plaintiff were reasonable because they related directly to defendants' ability to determine whether an emergency existed.

16

I conclude that the length of time defendants remained in plaintiff's home and their actions in the home, including seizing plaintiff, were reasonable under the undisputed facts of this case. Therefore, I will grant summary judgment for the defendants on plaintiff's claim that defendants violated his Fourth Amendment rights by remaining in his home and by seizing him.

2.  Plaintiff's familial relations claim

Plaintiff also claims that his right to familial relations under the Fourteenth Amendment was violated because defendant Barger questioned his two children outside his presence and because the content of some of those questions was intrusive. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. art. XIV. The Supreme Court has recognized that a component of substantive due process under the Fourteenth Amendment is a right to familial relations. Troxel v. Granville, 530 U.S. 57, 65 (2000); Meyer v. Nebraska, 262 U.S. 390, 399 (1923). However, this right may be limited by compelling governmental interests, such as protecting children. Brokaw v. Mercer County, 235 F.3d 1000, 1019 (7th Cir. 2000).

The Court of Appeals for the Seventh Circuit has set forth four factors for court to balance in determining whether a public official's interference with the parent-child

relationship violates the parent's substantive due process rights.  Doe v. Heck, 327 F.3d 492, 520 (7th Cir. 2003).   These factors are similar to those considered under a Fourth Amendment analysis:  (1) the nature of the privacy interest upon which the action taken by the State intrudes; (2) the character of the intrusion that is complained of; (3) the nature and immediacy of the governmental concern at issue; and (4) the efficacy of the means employed by the government for meeting this concern.  Id.  "This analytical framework allows courts to determine whether the governmental action taken was 'justified at its inception' and 'reasonably related in scope to the circumstances which [allegedly] justified the interference in the first place.'" Id. (quoting Darryl H. v. Coler, 801 F.2d 893, 903 (7th Cir. 1986)).

Although plaintiff cites several cases regarding his right to familial relations, the facts of this case are similar to United States v. Hollingsworth, 495 F.3d 795 (7th Cir. 2007).  In Hollingsworth, the court of appeals concluded that the defendant's right to familial relations was not violated by officials' interviewing her nine-year old child at school without her knowledge and for the sole purpose of pursuing a criminal investigation against her.  Id. at 800-03.  The court held that the interview was a "de minimis" intrusion because it lasted less than a half-hour, was conducted at the child's public school and involved no coercive interrogation techniques.  Id. at 802; see also Pittsley v. Warish, 927 F.2d 3, 9 (1st Cir. 1991) (holding that police officers did not violate substantive due process right of familial

18

relations when they told children, "If we see your father on the streets again, you'll never see him again," because act did not involve any physical touching or physical injury and was not directed at parent-child relationship.)

Like the court in Hollingsworth, I conclude that any intrusion by defendant Barger was minimal. Defendant Barger's interview of plaintiff's children lasted less than a half-hour, was conducted with both plaintiff's and his wife's knowledge and was conducted in their home, the least coercive setting. Further, the nature of plaintiff's interest in retaining control over his children was even more limited in this case because of the age of the children, thirteen and fifteen. As a child grows older, the scope of appropriate questions changes as well. Therefore, to the extent defendant Barger's questioning implicated plaintiff's substantive due process rights at all, the intrusion was reasonable.

Plaintiff relies heavily on the court of appeals' application of the third and fourth factors in Doe, in which the court required the government to show "'some definite and articulable evidence giving rise to a reasonable suspicion that a child had been abused or [was] in imminent danger of abuse.'" 327 F.3d at 521 (quoting Brokaw, 235 F.3d at 1019). However, plaintiff overreads Doe. The court did not hold that evidence of child abuse was required in all cases. Rather, the court was simply applying the requirement that the government must show that an important government interest is implicated by the intrusion. In Doe, the interest was preventing child abuse. In Hollingsworth, the interest was illegal

19

drug activity.

In this case, the government's interest was in investigating a potential emergency.  I conclude that defendant Barger's questioning of plaintiff's children was justified for all the reasons that made it reasonable for defendants to continue to remain in plaintiff's home because of the exigent circumstances.  Defendants have a compelling interest (and duty) in undertaking thorough investigations of 911 calls and protecting citizens in emergency situations.  To the extent that <u>Doe</u> and <u>Hollingsworth</u> require reasonable suspicion of a crime, I conclude that defendants had reasonable suspicion that domestic violence had occurred, or was about to occur, from the information they learned in plaintiff's home.  Therefore, either the exigent circumstances of the situation or the suspicion of domestic violence justified defendants' questioning of plaintiff's children.

Last, the means by which defendant Barger questioned plaintiff's children was reasonable and directly related to the government's compelling interest.  Even viewing the content of defendant Barger's questions from plaintiff's view as including specific topics such as domestic abuse, finances and an affair, the questions were targeted at determining whether an emergency existed in the home.  Plaintiff has adduced no evidence from which a reasonable jury could find that defendants went further than was reasonably necessary to determine whether plaintiff's children had any relevant information regarding the reason for their mother's 911 call.

20

Because I find that the Doe factors weigh strongly in favor of defendants, I will grant summary judgment to them on plaintiff's claims that his right to familial relations under the Fourteenth Amendment was violated by the questioning of his children outside his presence.

3. Plaintiff's Miranda rights claim

Plaintiff claims that defendant Wittmann violated his Fifth Amendment rights by failing to inform him of his Miranda rights when he was being questioned in the garage. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that before police officers interrogate a suspect in custody, they must warn the suspect of his right to remain silent and his right to an attorney. This Miranda warning is not required in all interactions between suspects and officers, only when the suspect is "in custody" and subject to "interrogation." United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996) (citing United States v. Burns, 37 F.3d 276, 280 (7th Cir. 1994)).

A Miranda violation provides a ground for liability under 42 U.S.C. § 1983 only when the suspect's statements are used against him in a "criminal case." Sornberger v. City of Knoxville, 434 F.3d 1006, 1024 (7th Cir. 2006) (citing Chavez v. Martinez, 538 U.S. 760, 778 (2003)). Even when the suspect's statements are not used at trial, earlier "courtroom uses" may provide a basis for § 1983 liability. Id. at 1025. In Sornberger, the Court of Appeals for the Seventh Circuit held that Chavez requires that "a criminal

21

prosecution must at least be initiated to implicate a suspect's right against self-incrimination." Id. at 1026.  Although there was no criminal trial in that case, the court found that the use of the suspect's statements during an arraignment and a bail hearing met the requirement that the statements were "used in a criminal case." Id.  at 1026.

In this case, it is far from clear whether plaintiff could meet the standard set forth in Sornberger.  However, because defendants proposed no facts on this subject in their motion for summary judgment, I cannot grant summary judgment to defendants on this ground.

The sole issue defendants raise in their motion for summary judgment on this claim is whether plaintiff was "in custody" so as to trigger his right to a Miranda warning.  In the alternative, defendants contend that even if plaintiff was "in custody," defendants are entitled to qualified immunity for not giving plaintiff a Miranda warning because the law did not put defendants on notice that not doing so would violate plaintiff's constitutional rights.

An individual is "in custody" when his or her movement is restrained to the degree comparable to a formal arrest.  Burns, 37 F.3d at 280 (citing California v. Beheler, 463 U.S. 1121, 1125 (1983)).  Whether the degree of restraint has reached a level comparable to a formal arrest is determined by the totality of the circumstances from the viewpoint of a reasonable person.  Ochana v. Flores, 347 F.3d 266, 270 (7th Cir. 2003).  Factors used in evaluating the totality of the circumstances include whether the authorities: (1) informed the person that he was free to refrain from answering questions; (2) engaged in prolonged,

22

coercive and accusatory questioning; (3) used subterfuge to induce self-incrimination; (4) exerted control over the environment by the presence of several officers, a show of force or authority or brandishing weapons; (5) physically restrained the person's freedom of movement; (6) told the person that he was not under arrest and could leave the scene; and (7) otherwise acted in a way that would lead a reasonable person to believe he could interrupt the questioning by leaving the scene. Sprosty v. Buchler, 79 F.3d 635, 641 (7th Cir. 1996); United States v. Wyatt, 179 F.3d 532, 536 (7th Cir. 1999); United States v. Thompson, 496 F.3d 807, 810-11 (7th Cir. 2007). In addition, the court must consider the length and place of questioning. United States v. Saadeh, 61 F.3d 510, 519 (7th Cir. 1995). It is an objective test; the perception of the officer or suspect is irrelevant. Stansbury v. California, 511 U.S. 318 (1994).

Applying the law to the facts in this case shows that it is a close call whether plaintiff was in custody. On one hand, some facts support a conclusion that plaintiff was not in custody. Defendant Wittmann's questioning was not coercive or accusatory. Plaintiff was being held in familiar surroundings by only one officer. He never was handcuffed and defendant Wittmann never brandished his weapon. Plaintiff was even left completely alone for a short time while defendant Wittmann fetched him a glass of water. Plaintiff was not treated differently from others in his home and he was not the exclusive target of police questioning. Sadeeh, 61 F.3d at 520 (holding that suspect was not in custody when he was

23

not treated differently from other persons who happened to be at repair shop when police arrived, and was not exclusive target of their accusatory questioning).  Although the exact amount of time plaintiff was in the garage is not a matter of record, it was less than an hour. Beckwith v. United States, 425 U.S. 341, 347-48 (1976) (three-hour interview in suspect's home did not implicate Miranda).  Plaintiff has adduced no evidence showing that defendant Wittmann engaged in any subterfuge to induce self-incrimination.

Other facts suggest that plaintiff may have been in custody.  He was never informed that he was not under arrest or that he was free to leave at any time.  United States v. Fazio, 914 F.2d 950, 956 (7th Cir. 1994) (finding suspect not in custody when he was told repeatedly he was not under arrest and could leave at any time).  Although plaintiff was in the garage with only defendant Wittmann, two other officers, defendants Ricther and Barger, were present at the scene and inside the house asking questions of his wife and children.  Griffin, 7 F.3d at 1518-19 ("where police are in full control of the questioning environment, custody is more easily found").  Plaintiff's movement was restrained in some manner because he was not allowed to enter the kitchen where his wife was being questioned.  Sprosty, 79 F.3d at 641 (stating that factor that could lead to finding of no custody was that suspect was not prohibited from communicating with those present in his mobile home).

Because the facts in this case point in different directions on the custody question,

24

a plausible argument could be made in favor of plaintiff or defendants on this issue. This uncertainty dooms plaintiff's claim. Under <u>Pearson v. Callahan</u>, 129 S. Ct 808, 818 (2009), district courts are not required in all instances to determine whether a constitutional violation has occurred when it is clear that the defendants are entitled to qualified immunity. For example, in cases like this one in which the constitutional question is fact-bound, a finding that there was a constitutional violation or that there was not will contribute little to furthering the development of constitutional precedent. <u>Id.</u> at 818-19.

Plaintiff has failed to show that the law was clearly established that defendants conduct was unconstitutional. He cites no cases with similar facts in which the Supreme Court or the court of appeals found a <u>Miranda</u> violation. My own research suggests that the case law did not provide defendant Wittmann with a clear directive to provide plaintiff with <u>Miranda</u> warnings while questioning him in the garage. Because I cannot conclude that defendant Wittmann could have known from the existing state of the law that he was violating plaintiff constitutional rights, I will grant summary judgment for defendants on plaintiff's Fifth Amendment claim.

## D. <u>Plaintiff's Arrest</u>

Plaintiff makes two arguments that his arrest was invalid: (1) the arrest was the fruit of defendants remaining in his home unlawfully and seizing him unlawfully; and (2) even

25

with the information defendants obtained while they were in the house, they lacked probable cause.  Because I have concluded that defendants did not violate plaintiff's Fourth Amendment rights while they were investigating the 911 call, plaintiff's first argument fails.

With respect to plaintiff's second argument, probable cause for an arrest requires a reasonable belief by law enforcement agents, in light of the facts and circumstances within their knowledge at the time of the arrest, that a suspect has committed an offense or was committing one.  United States v. Kincaid, 212 F.3d 1025, 1028 (7th Cir. 2000); United States v. Osborn, 120 F.3d 59, 62 (7th Cir. 1997).   In this case, the question is whether defendants had probable cause that plaintiff had engaged in domestic abuse of a spouse in violation of Wis. Stat. § 968.075.   The elements for this crime are (1) intentional infliction of physical pain, physical injury or illness; (2) intentional impairment of physical condition; (3) a violation of Wis. Stat. § 940.225 for sexual assault; or (4) a physical act that may cause the other person reasonably to fear imminent engagement in the conduct described in (1), (2), or (3).

The undisputed facts show that defendants had probable cause to believe that plaintiff had violated Wis. Stat. § 968.075(1).  At the time defendants made the arrest, they knew that (1) a 911 call had been made from plaintiff's residence; (2) the return call was not answered; (3) plaintiff and his wife had engaged in a "heated argument"; (4) plaintiff's wife admitted to making the 911 call, but stated that she could not remember why she done so;

26

(5) plaintiff's wife appeared nervous and upset when defendants questioned her; (6) plaintiff had consumed several alcoholic drinks during the day; and (7) plaintiff admitted that he "bumped" his wife during their argument.  Taking a common sense view of these undisputed facts, a reasonable law enforcement officer could conclude that plaintiff had committed domestic abuse under Wis. Stat. § 968.075(1) by finding that when plaintiff "bumped" his wife he intentionally inflicted physical pain or physical injury on her or had engaged in a physical act that may have reasonably caused his wife to fear imminent engagement of intentional infliction of physical pain or physical injury.  Accordingly, defendants' motion for summary judgment will be granted with respect to plaintiff's claim for unlawful arrest.

## ORDER

IT IS ORDERED that

1.  Plaintiff David Hanson's complaint against defendant Dane County Sheriff's Department is DISMISSED because the department is a nonsuable entity;

2.  The motion for summary judgment filed by defendants Dane County, Dawn Barger, Tim Richter and Steve Wittmann is GRANTED;

3.  Plaintiff's motion for partial summary judgment is DENIED; and

4.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 3d day of March, 2009.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

28